**In re Charles Alex ARTZT and Carole J. ARTZT, Debtors.**

**LINDALE NATIONAL BANK, Plaintiff,**

**v.**

**Carole J. ARTZT, Defendant.**

**Bankruptcy No. 90–60486.**
**Adv. No. A–91–6278.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 9, 1992.

T.J. Baynham, Jr., Tyler, Tex., for debtors.

Alan Jackson, Tyler, Tex., for Lindale Nat. Bank.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Complaint of Lindale National Bank for Declaratory Judgment pursuant to regular setting. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all issues before the Court.

### FACTUAL BACKGROUND

Carole J. Artzt, hereinafter referred to as ("Debtor"), and her husband, Charles A. Artzt, filed for relief under Chapter 7 of the Bankruptcy Code on April 2, 1990. Prior to filing, Debtor had signed a promissory note, hereinafter ("Note One") with Lindale National Bank, hereinafter referred to as ("Bank"), in the amount of $31,628.80. Note One was secured by the inventory, furniture, and fixtures of a retail apparel business run by Debtor.

Within days of executing Note One, Charles A. Artzt informed the president of Bank that both Debtor and Charles A. Artzt would soon be seeking bankruptcy relief. The next day, Debtor and Charles A. Artzt filed their petition for relief. Subsequently, on April 3, 1990, Debtor executed a new note, hereinafter referred to as ("Note Two") with Bank. In all respects,

Note Two is governed by the exact terms of Note One with the possible exception that the timing of payments pursuant to Note Two lag those of Note One by exactly one month. Note Two even reflects that it is a renewal of Note One. No new consideration was received by Debtor for the execution of Note Two.

It is not disputed that Debtor's schedules listed the debt resulting from Note One. Debtor's Statement of Intention proposed to surrender the collateral. Whether the collateral was actually surrendered or not is open to dispute. Charles A. Artzt maintains that in his discussion with the president of Bank, the parties agreed that Debtor would continue in possession of the collateral securing Note One. Apparently, the keys to Debtor's business premises, while offered to Bank, were never surrendered. Subsequently, Debtor executed Note Two.

Debtor continued to operate her business for approximately one more year before closing. After Bank began attempts to collect the deficiency resulting from the default in Note Two, Debtor asserted the defense that the debt which Bank sought to collect was discharged in Debtor's previous bankruptcy. Debtor explains her execution of Note Two and continuing attempts to operate her business as being motivated solely by her desire to "do the honorable thing" in reducing Bank's deficiency from Note One.[1]

Bank's interpretation of the facts is somewhat different. Bank argues that prior to filing for relief, Bank's president was approached by Charles Artzt for the purpose of discussing the future of Debtor's business. Bank maintains that Charles Artzt assured Bank's president that it would be permissible to structure a transaction whereby Note One would be resurrected as a post-petition obligation untouched by the effect of a discharge in bankruptcy. Bank contends that in reliance on Charles Artzt's promises Bank executed Note Two with Debtor. In further reliance on Charles Artzt's representations Bank neglected to obtain an agreement reaffirming the debt resulting from Note One thereby preventing its discharge. It is not disputed that on at least four occasions, Bank obtained reaffirmation agreements from Charles Artzt and Debtor, three of which were ultimately approved by the Court. As a postpetition obligation, Bank argues that the debt resulting from the default of Note Two is not discharged by virtue of Debtor's previous discharge of Note One in bankruptcy. The matter was taken under advisement.

## DISCUSSION OF LAW

At the outset, the Court observes that it is quite disturbed by the apparent attempts by both parties to manipulate the bankruptcy process. For their part, Charles Artzt and Debtor failed to deliver the collateral subject to Note One to the care of the Chapter 7 trustee. Even if the Court is to believe that no equity existed in the collateral, such unilateral action on the part of a party seeking relief under the Code is unwarranted. Charles Artzt and Debtor compounded this omission of care in continuing to remain in possession and sell this collateral which, until it was effectively abandoned at the conclusion of the § 341 meeting of creditors, continued to be property of the estate. However, Bank's hands are not totally unclean. Obviously, both Bank and Charles Artzt and Debtor have differing interpretations of the purpose behind Note Two. Given Bank's prior knowledge of the purpose and effect of reaffirmation agreements, this Court has some doubts over Bank's role in executing Note Two to accomplish the same result. While admittedly, Bank may not have initiated this process, Bank was at all times a willing participant in its execution. With this said, the Court will now address the issue before it.

As a general rule, all debts arising prepetition will be discharged by operation of

---

**1.** Section 524(f) provides that a debtor may voluntarily repay debts to a creditor in the absence of a valid and enforceable reaffirmation agreement. 11 U.S.C.A. (West 1979 and Supp.1992).

Chapter 7 of the Code. § 727.[2] However, in certain cases, prepetition debts can be excepted from discharge. First, § 523 of the Code provides creditors with numerous options for excepting specific types of debts from discharge. In all cases under § 523 the exception of a creditor's debt from discharge will be ordered only after the initiation and successful prosecution of an adversary proceeding. *See* Fed. R.Bankr.Pro. 7001 *et seq.* The other avenue for excepting a debt from discharge is through the execution of a reaffirmation agreement between a creditor and the debtor. § 524(c). Basically, a reaffirmation agreement has the effect of reaffirming a debtor's preexisting in personam liability on the underlying obligation giving rise to the debt. Therefore, the debtor's obligation on the debt is unchanged by operation of the Bankruptcy Code.

■ Reaffirmation agreements are not favored under the Code and compliance with the specific terms in § 524 is mandatory. In pertinent part, this section requires the reaffirmation agreement to be in writing, signed prior to discharge, and filed with the court. Section 524 also requires a court hearing at which the debtor personally appears. The debtor may also rescind the agreement at any time prior to discharge or within 60 days after the agreement is filed with the court whichever occurs later. A reaffirmation agreement which does not comply fully with § 524 is void and not enforceable.

■ Essentially, this case boils down to a determination of whether Note Two is a distinct and valid postpetition agreement or whether Note Two is simply an attempt to obligate Debtor on a previously discharged liability resulting from Note One. The representative case law is not uniform on this subject. In *In re Petersen*, 110 B.R. 946, 950 (Bankr.D.Colo.1990) the debtor entered into a lease with a creditor three months before filing for relief under Chapter 7 of the Code. The debt was listed in debtor's schedules and was not assumed by the trustee. Following debtor's discharge, debtor executed an addendum to the lease

purportedly reinstating and reaffirming the lease agreement. At the time of the execution of the addendum, debtor was current in his payments under the lease. Debtor operated under the lease agreement for almost two years before defaulting. In defense to the creditor's suit for breach of lease, debtor argued that since no reaffirmation agreement had been properly executed, his liability on the lease was discharged by operation of his previous bankruptcy. The court found that "where ... an informed Chapter 7 debtor elects, post-petition, to adopt and continue a prepetition lease agreement rejected by the trustee, and there is legally sufficient post-petition consideration between the parties, then the lease will be deemed a binding, enforceable postpetition obligation of the debtor. It will not be deemed or construed to be a reaffirmation agreement subject to or contingent on § 524(c) and (d)."

In *In re Button*, 18 B.R. 171 (Bankr. W.D.N.Y.1982) a debtor stole money from another party. Debtor was convicted of larceny and sentenced to pay criminal restitution as a condition of probation. Subsequently, debtor filed for relief. The debt to the victim was discharged; however, the criminal restitution was not. Later, debtor defaulted on his criminal restitution payments and was threatened with a revocation of probation. In response, debtor executed a promissory note payable to his victim in exchange for being released on parole. Subsequently, the debtor defaulted on the payments arguing that the debt underlying the promissory note was discharged by operation of his previous Chapter 7. The court disagreed finding that the "note at issue evidences a new, post-petition debt incurred by [debtor] which was [supported by good and sufficient consideration.]" *Id.* at 172.

In *Matter of Gilliland*, 62 B.R. 587 (Bankr.D.Neb.1986) a case remarkably similar to the present case, the court came to a different conclusion. In *Gilliland*, debtors listed in their Chapter 7 petition and schedules a debt to a bank secured by real estate, an automobile and two horses. Fol-

---

**2.** Unless otherwise noted, all statutory references shall be to 11 U.S.C.A. (West 1979 and Supp. 1992).

lowing the debtors' discharge, the bank contacted debtors in order to obtain possession of the collateral. Debtors wanted to keep the collateral. Subsequently, debtors executed a new note to the bank which was secured by the collateral. The note stated that it was a rewrite of the discharged note. Debtors did not receive additional consideration for the execution of this note save for the payment of approximately one hundred dollars to purchase an insurance premium on one of the horses. No reaffirmation agreement was entered into by the parties. After making several payments on the note, debtors defaulted and the bank attempted to collect on the note. After a state court had entered judgment finding that the debts were post-petition obligations and not covered by debtors' discharge, debtors reopened their bankruptcy case.

The bankruptcy court found that the debt at issue was the same debt which had been discharged in bankruptcy. The court relied on the statement in the note reciting that fact as well as the fact that no new consideration was given. Also noted was bank's failure to comply with § 524 of the Code in executing a valid and enforceable reaffirmation agreement. The court opined that "if the bank's arguments were accepted, any creditor could tell a debtor that the debtor can keep the collateral if only the debtor will sign up again on the discharged obligation. This is exactly the reason § 524(c) was adopted." *Id.* at 590.

Additionally, in *In re Gardner*, 57 B.R. 609 (Bankr.D.Me.1986) a debtor accountant discharged a prepetition malpractice claim brought by a former client through operation of Chapter 7. Prior to discharge, the court granted the creditor relief from the automatic stay to pursue the malpractice claim against debtor's insurance carrier. For the purpose of proper pleading, debtor was listed as a defendant in the subsequent law suit. Soon after the initiation of the state court trial, debtor's insurance carrier and the creditor entered into settlement negotiations which stalled at a point when the parties were less than five thousand dollars apart on respective settlement offers. Fearing the effect of a judicial finding of negligence on his career, debtor

agreed to pay this amount. Approximately $1,500.00 was placed in escrow with the creditor's attorney and the debtor agreed to sign a note for the remainder. After a few days, the debtor decided against proceeding with the settlement. Debtor demanded the return of the $1,500.00; the promissory note was never signed. The creditor refused to return the $1,500.00 and continued to demand debtor sign the promissory note arguing that the debtor's agreement to pay was voluntary and was supported by new consideration.

In holding for debtor, the court, quoting § 524(c), noted that since the consideration for the agreement was based in part on a dischargeable debt, compliance with § 524(c) was mandatory. Since no proper reaffirmation agreement had been executed between the parties, the court found the agreement unenforceable. *Id.* at 611. It is noteworthy that the court found debtor's initiation of the payment proposal, unpressured by the other parties, to be irrelevant. *Id.* at 611. *See also In re Bowling*, 116 B.R. 659 (Bankr.S.D.Ind.1990). After review, the Court finds this latter line of cases more persuasive.

While the Court is somewhat sympathetic to Bank's position, the fact remains that Note Two is simply an attempt to collect a debt which was discharged by operation of Debtor's bankruptcy. All relevant terms and amounts are the same; even the collateral is the same. As in *Gilliland*, Note Two states that it is a renewal of Note One. Similarly, no new consideration was exchanged. The lack of new consideration is what distinguishes this case from the cases favorable to Bank's position. In both the *Petersen* and *Button* cases, the courts found that the postpetition agreements were supported by good and valuable consideration. In *Petersen*, the consideration was debtor's continued use and occupancy of the creditor's real estate. In *Button*, the consideration consisted of the debtor's release from parole. Furthermore, the consideration given in both cases was not based in whole or part on a discharged debt. In *Petersen*, as of the execution of the lease addendum, debtor was current in his payments under the terms of the lease. Simply put, while the lease was entered

into prepetition there was no existing pre- or postpetition indebtedness owing between the parties. As for *Button,* the consideration supporting the promissory note to the victim was not the prepetition debt between victim and debtor arising from debtor's conduct but instead rested on a substitution of a nondischargeable criminal process for a civil enforcement mechanism.

■ The Court is also influenced by the fact that Bank consciously failed to file a reaffirmation agreement in this case. As enacted, § 524(c) is purposefully rigorous in application. This Court agrees with the *Gilliland* court that supporting Bank's position would be counter to the policy goals of § 524(c) in protecting debtors from creditors and in many instances from their own improvident actions. Accordingly, for the reasons previously given, the Court finds that Note Two is not a valid postpetition obligation but is instead an impermissible attempt to collect a debt discharged by operation of Chapter 7. Note Two is void and of no effect. Bank's declaratory judgment is DENIED. Finally, because Debtor's participation in this affair is not unfettered by controversy the Court finds that an award of attorney's fees to Debtor is not warranted.