## CIRCUIT COURT OF LOUDOUN COUNTY

Marie S. Thompson

v.

Solomon E. Brockington
and Virginia O. Brockington

January 6, 1997

Case No. (Law) 17721

By Judge James H. Chamblin

After consideration of the evidence, the argument of counsel and the authorities presented at the bench trial on December 16, 1996, the Court, for reasons hereafter stated, rules as follows.

1. Judgment is granted to the Defendants, and the amended motion for judgment is dismissed.

2. As the Court's decision is based on the evidence presented at trial, the Defendants' motions to strike and for summary judgment do not need to be decided.

3. The Defendants' motion for sanctions is granted.

*Factual and Procedural Background*

On December 14, 1988, the Defendants, Solomon E. Brockington and Virginia D. Brockington, executed a note payable to the order of the plaintiff, Marie S. Thompson, in the original principal amount of $67,086.78. The Note was secured by a deed of trust on 1516 Marion Street, N.W., Washington, D.C.

In October 1991, the defendants filed for bankruptcy protection under Chapter 7 of the Federal Bankruptcy Code. The plaintiff was listed as a secured creditor. She received proper notice of the bankruptcy proceedings.

During the bankruptcy proceedings, the defendants did not reaffirm their debt to the plaintiff. Although the plaintiff did file a motion to lift the stay in bankruptcy, she never proceeded to foreclose on the property under the deed of trust.

The Defendants received a discharge in bankruptcy dated January 29, 1992. Before filing this suit, the plaintiff received a copy of the discharge which specifically provides:

> All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.

The debt evidenced by the note and the defendants' personal liability on the debt were discharged in the bankruptcy proceeding. After the discharge, on February 29, 1992, Mr. and Mrs. Brockington sent a letter to Mrs. Thompson which stated in relevant part:

> Reference is made to the property at 1516 Marion Street, N.W., Washington, D.C., which your attorney is probably getting ready to foreclose on the second trust mortgage. Although the property has devalued and several tenants have been rayed [sic for layed] off and are not paying their rent, *we propose to pay you $300 a month in interest only for the next 60 months in lieu of foreclosure.* This will give us a chance to catch up on past due expenses on the property and pay for the removal of asbestos brought to our attention by an environmental engineer [emphasis supplied].

On March 12, 1992, Robert R. Dively, Jr., Mrs. Thompson's attorney, replied to the Brockingtons' letter. His letter, addressed only to Mr. Brockington, stated in pertinent part:

> Dear Mr. Brockington:
>
> I am writing in response to your letter to Ms. Thompson, dated February 29, 1992, regarding the property at 1516 Marion Street, NW, Washington, DC 20001. *Ms. Thompson is open to your proposed resolution in lieu of foreclosure. However, Ms. Thompson regards the offer of $300.00 per month to be rather low.* It only amounts to less than six percent (6%) interest, and *she believes that it would be fair*

*if you were willing to pay something more in the vicinity of $400.00
per month* [emphasis supplied].

With a letter dated April 4, 1992, Mr. Brockington sent a check for $400.00
to Mrs. Thompson. His letter stated in pertinent part:

Enclosed is a $400.00 check which will be continued until conditions
of the local economy and property get better or until we are no longer
involved with the property. If we are lucky enough to sell the property
at some future date, we can discuss arrearages at that time.

Mr. Brockington continued to pay Mrs. Thompson $400.00 per month through
June 1995.

In 1994 the Brockingtons entered into an Extension and Modification
Agreement with Chrysler First Business Credit Corporation (CFBCC) which
held the first deed of trust on the Marion Street property. Mrs. Thompson
executed a Subordination Agreement in which she agreed to subordinate her
deed of trust to the first deed of trust in favor of CFBCC as extended and
modified. The Brockingtons did not sign the Subordination Agreement. They
signed no document which personally obligated them to Mrs. Thompson.

The defendants defaulted on their loan to CFBCC which foreclosed on the
property in July 1995. Mrs. Thompson received nothing out of the foreclosure.

On March 27, 1996, Mrs. Thompson filed her motion for judgment against
Mr. and Mrs. Brockington. She clearly sued on the note dated December 14,
1988, and alleged that the note was "reaffirmed by Subordination Agreement
dated 6-20-94." The Defendants filed their Answer and Grounds of Defense
on April 17, 1996, asserting, among other grounds, that the obligation was
discharged in bankruptcy.

On May 20, 1996, the case was set for trial on December 16, 1996.

On October 18, 1996, the Plaintiff filed a motion to amend the motion for
judgment to add the following after the words quoted above:

the parties attained a new agreement subsequent to bankruptcy
discharge and abided by the terms of that new agreement from March
1992 to June 1995.

On December 2, 1996, the motion to amend came on to be heard at 2:00
p.m. Mr. Dively appeared at 2:00 p.m. for the plaintiff, but Mr. Carter, who
had been properly noticed for 2:00 p.m. that day, did not appear. The motion
was granted. Mr. Dively left after advising the Court that he would not object

to a continuance if requested by the defendants because of the granting of the amendment to the motion for judgment. Mr. Carter appeared later on that day, and he was advised of what had occurred. He orally objected to the amendment, but stated he was ready to go to trial on December 16, 1996, on the amended motion for judgment. The Defendants never moved for a continuance.

Before the trial commenced, the defendants filed a Motion for Summary Judgment and/or to Strike Plaintiff's Case in Chief and Motion for Sanctions for Violating the Federal Discharge Injunction. The defendants did not request the Court to rule on the Motion until after the plaintiff rested her case in chief. At that time, the Court denied the Motion to Strike and took the Motion for Summary Judgment and Sanctions under advisement. The defendants renewed their Motion to Strike at the end of all the evidence.

### Legal Conclusions and Analysis

#### A. There Is No Reaffirmation Agreement

In his final argument, Mr. Dively conceded that there was no reaffirmation agreement. Indeed, he had to make the concession because the evidence does not in any way support a finding that the Brockingtons reaffirmed the discharged debt. There was no evidence that a reaffirmation agreement had been executed in accordance with the Bankruptcy Code Section 524(c). Mr. Dively conceded that he could not prove what was alleged in the original motion for judgment (specifically, the note was "reaffirmed by subordination dated 6-20-94").

#### B. Mrs. Thompson and Mr. Brockington Did Reach a Post-Discharge Agreement, But It Was Not Based on the Original Note

For purposes of determining what agreement existed post-discharge between the parties, I am assuming without deciding that the correspondence evidencing the agreement meets the requirements of Virginia Code §§ 11-2(9) and 11-2.01 (statutes of fraud).

Mr. and Mrs. Brockington wrote their letter of February 29, 1992, to Mrs. Thompson to make her an offer to keep her from foreclosing under the deed of trust which she still had on the Marion Street property. Nowhere in the letter do they state that they considered themselves personally liable for the debt evidenced by the original note. Why should they? They just went through a bankruptcy proceeding to discharge their personal liability. However, they still

had the Marion Street property on which Mrs. Thompson continued to have a valid second deed of trust which was in default. Being in default, Mrs. Thompson could have foreclosed, and the Brockingtons would have lost their property. It is obvious that, right after the bankruptcy, the Brockingtons wanted to work with Mrs. Thompson is an effort to avoid losing the property.

The letter of Robert R. Dively, Jr., attorney for Mrs. Thompson, dated March 12, 1992, to Mr. Brockington refers merely to a "resolution in lieu of foreclosure." It does not mention the original note. It is silent as to any personal liability on the original note. It does not say that the payments to Mrs. Thompson are a debt based upon the original note. It does not mention a reaffirmation. Because it is addressed only to Mr. Brockington, it is a counter-offer to him alone for payments "in the vicinity of $400.00 per month." Mr. Brockington accepted the counter-offer when he sent Mrs. Thompson the letter of April 4, 1992, and the $400.00 check. The plaintiff's evidence failed to show that any checks were sent by Mrs. Brockington. Just because Mrs. Brockington was a co-owner of the property, it is does not make Mr. Brockington her agent for all matters pertaining to the property. Mrs. Thompson testified that she always talked to Mr. Brockington alone about the property.

Accordingly, there is no liability under any theory upon Mrs. Brockington.

I find that there was an agreement entered into between Mrs. Thompson and Mr. Brockington in March 1992, whereby Mrs. Thompson agreed not to foreclose under her deed of trust as long as Mr. Brockington paid her $400.00 per month until the Brockingtons were no longer involved with the property. The agreement was fully performed because Mr. Brockington paid Mrs. Thompson $400.00 per month up to June 1995, and the property was foreclosed upon in July 1995. Therefore, Mr. Brockington has no further liability under the agreement.

## C. *The Agreement Was Not a Novation*

In his closing argument, Mr. Dively argued that the post-discharge agreement was a novation. A novation is a "mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another." *Honeywell v. Elliott*, 213 Va. 86, 89 (1972).

The instant case is not one of a novation for several reasons. First, there is no evidence that the parties agreed to discharge a valid existing obligation by the substitution of a new valid obligation. The parties never discussed the post-discharge agreement until after the debt evidenced by the original note

was discharged in bankruptcy. There can be no substitution because the debt evidenced by the original note did not exist when the post-discharge agreement in lieu of foreclosure was reached.

Second, the agreement was not among all the parties involved. Mrs. Brockington was not a party to the post-discharge agreement.

Third, even if the post-discharge agreement were considered a novation, it cannot be any more than the agreement that Mrs. Thompson and Mr. Brockington reached. It cannot reach back and take on conditions and obligations from the prior agreement.

### D. *Mr. Brockington's Payments Were Not Voluntary*

Under Bankruptcy Code § 524(f), Mr. Brockington could have made voluntary payments to Mrs. Thompson. Therefore, merely making payments to her would not be evidence of an agreement. However, Mr. Brockington made his payments not voluntarily, but under an obligation to pay in order to keep Mrs. Thompson from foreclosing on the property. He made them pursuant to his agreement with Mrs. Thompson.

### E. *Cases Cited by the Plaintiff*

The plaintiff cited three bankruptcy cases concerning post-petition agreements. *In re Heirholzer*, 170 B.R. 938 (Bkrtcy. N. D. Ohio 1994); *In re Watson*, 192 B.R. 739 (9th Cir. B.A.P. 1996); and *In re Peterson*, 110 B.R. 946 (Bkrtcy. D. Colo. 1990). These cases support exactly what occurred in this case, i.e. there was a valid post-petition agreement with sufficient consideration in agreeing not to foreclose. But the cases do not help the plaintiff in her futile effort to convince the Court that the Brockingtons agreed to become personally liable on a debt based upon the original note.

### Sanctions

When the motion for judgment was filed on March 27, 1996, it was in clear violation of the injunction and prohibition from the bankruptcy court. Mrs. Thompson was a creditor whose debt had been discharged in the defendants' bankruptcy proceeding. She received notice of the discharge and the injunction, yet she filed the instant suit. Her motion for judgment seeks a judgment on the debt evidenced by the original note which was discharged in bankruptcy.

The allegation in the motion for judgment that the note was reaffirmed by the Subordination Agreement dated June 20, 1994, is completely unsupported by the evidence and the Agreement itself. There was no evidence that the note was reaffirmed by the defendants. Also, there is no way that the Subordination Agreement can be construed to evidence a reaffirmation of the discharged debt by the defendants.

The allegation of the amendment to the motion for judgment that the parties "attained a new agreement ... based upon the original note subsequent to bankruptcy discharge" is completely unsupported by the evidence.

Under Virginia Code § 8.01-271.1, Mr. Dively's signature on the motion for judgment and the motion to amend the motion for judgment constituted a certificate by him that both are well-grounded in fact and are warranted by existing law. The latter, at least, is an objective standard of reasonableness. *Tullidge v. Board of Supervisors*, 239 Va. 611 (1990). I feel that both should be judged by an objective standard of reasonableness.

Applying an objective standard of reasonableness, I feel that a reasonably prudent attorney with knowledge of the facts and law applicable to this case would not have filed this suit. There was no evidence of a reaffirmation, a new agreement based upon the original note, or a novation.

Although the suit was brought upon advice of counsel, I do not feel that only Mr. Dively violated the rule of Section 8.01-271.1. Mrs. Thompson was well aware of the injunction against collecting the debt before the suit was filed. Also, she acknowledged when she testified that the only basis for the Brockington's personal liability is their "word" in 1988 that they would pay the debt personally. I understand that she has strong feelings that a person should not "go back on his word," but there is a difference between a moral obligation and a legal obligation.

This is not a case of an argument to extend, reverse, or modify existing law. Mr. Dively makes no such argument.

Mrs. Thompson's claim was not well-grounded in fact and warranted by existing law. Reasonably prudent counsel should have realized this. A discharge in bankruptcy is not a meaningless exercise. There is a strong public policy behind bankruptcy protection. There must be clear, specific, and unequivocal evidence that the debtors reaffirmed the debt or that a new agreement came into existence based upon the discharged debt. The plaintiff's evidence is far from clear, specific, and unequivocal. This suit should never have been filed.

The plaintiff cites *In re Artzt*, 145 B.R. 866 (Bkrtcy. E.D. Tex. 1992), as support for an argument that attorney's fees should not be awarded against her. In that case, a debtor who successfully avoided liability in an impermissible

attempt to collect a debt discharged in bankruptcy was not entitled to an award of attorney's fees because the debtor's participation in the events leading to the litigation was not "unfettered by controversy." 145 B.R. at 870. The Court observed that both parties attempted "to manipulate the bankruptcy process." 145 B.R. at 867.

*Artzt* does not apply here because there is absolutely no showing that the Brockingtons in any way "manipulated" the bankruptcy process. They merely took advantage of the rights and remedies available to them in bankruptcy.

This case is much closer to a case cited by the defendants. *In re Myers*, 18 B.R. 362 (Bkrtcy. E.D. Va. 1982). In *Myers*, a creditor was held in contempt and fined for bringing a detinue action in state court to collect under a contract of sale evidencing a debt that had been previously discharged in a bankruptcy proceeding in which the creditor had been listed. In basic terms, Mrs. Thompson did the same thing in this suit, i.e. she sued on a debt she knew had been discharged in bankruptcy but tried to substantiate it with an allegation that a new agreement had been made based on the discharged debt when she knew, or she should have known, that there were no facts to support it.

Sanctions will be imposed on both Mrs. Thompson and Mr. Dively in the form of paying the Brockington's reasonable attorney's fees. Let Mr. Carter submit directly to me with a copy to Mr. Dively a copy of his statements of attorney's fees to the Brockingtons. Upon receipt thereof, I will set the amount of the sanction and the terms for its payment.