In re Chad E. TURNER, Debtor.

In re Charles R. JONES, Debtor.

In re Ralph MOERY and Betty Moery, Debtors.

In re David M. KIRCHBERG, Debtor.

In re Ronald A. ORR and Margaret K. Orr, Debtors.

In re Michael T. KLEPPIN and Molly D. Kleppin, Debtors.

Bankruptcy Nos. 97–90016, 97–90025, 97–90029, 97–90123, 97–90126, and 97–90127.

United States Bankruptcy Court, C.D. Illinois, Danville Division.

May 7, 1997.

Peter Francis Geraci, Atty. at Law, Chicago, IL, for debtors.

U.S. Trustee, Peoria, IL, trustee.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

Attorney Peter Francis Geraci is the head of a Chicago law firm that employs approximately 20 lawyers and specializes in filing Chapter 7 bankruptcy cases. This firm filed a total of 6,200 bankruptcy cases in Federal Courts in Illinois, Indiana, and Wisconsin in 1996. In 1996, the Geraci firm began to increase the number of bankruptcy cases filed by it in the Central District of Illinois. The firm has now filed several hundred cases in this District and problems have developed because of the firm's practices.

The Geraci firm files hundreds of reaffirmation agreements with the Court whereby his clients, the debtors, enter into written agreements with their creditors to retain certain property and make agreed-to payments to the creditors for the retention of the property. Recently, in an apparent effort to reduce the amount of work on the part of the firm, the Geraci firm began to file numerous documents entitled "Reaffirmation Agreement," but without the signature of the creditor or any indication of creditor approval or even notice to the creditor.

Review of the six above-captioned cases has revealed that in each case a reaffirmation agreement was filed which did not bear the signature of anyone representing the creditor with which Debtors sought to reaffirm various debts. On April 3, 1997, a Notice was sent requiring the Debtors and their attorney to appear at hearing on April 24, 1997, for the purpose of determining the validity of the reaffirmation agreements in question. A hearing was held on April 24, 1997, at which time all six cases above were heard together, and the matter was taken under advisement. For the purpose of this Opinion, the above-captioned cases will be consolidated in that the issue involved in each case is the same.

The issue before the Court is whether a document entitled "Reaffirmation Agreement" bearing only the signature of the Debtor or Debtors can be held as a valid enforceable reaffirmation agreement pursuant to the provisions of 11 U.S.C. § 524. In reviewing the reaffirmation agreements before the Court in these matters, the Court found that, not only were the reaffirmation agreements in question not signed by the creditors who were affected, but there was also no indication of any kind that the creditors in question had even been served with a copy of the agreement so as to advise them of the Debtors' desire to reaffirm. At hearing on April 24, 1997, Debtors' counsel, Mr. Driscoll, indicated that these agreements were binding and that the creditors were free to object to them at any time. However, there is no evidence, such as a certificate of service, that the creditors in question even knew that these purported reaffirmation agreements had been filed. Debtors' counsel told the Court that he told the debtors in these cases that the creditors "very often" do agree to these reaffirmations. But, counsel was unable to tell the Court that the creditors in the cases here agreed to the reaffirmation, because he didn't know. Mr. Driscoll attempted to persuade the Court to allow him to continue to file reaffirmations unsigned by the creditor by stating:

> We have never had a problem with any of the reaffirmation agreements in any Court except for these six cases. This is the first we are hearing this.

The claim by Mr. Driscoll that this is the first time the Geraci firm has had a problem with attempting to file unsigned reaffirmation agreements is untrue.[1] The Geraci firm has had problems with this practice in the

---

1. A separate hearing has been set by the Court for May 15, 1997, where Mr. Driscoll will have an opportunity to explain his comments to the Court and his subsequent conduct.

Northern, Central, and Southern Districts of Illinois. The following events had already taken place prior to this hearing:

1. The Court reminded Mr. Driscoll that a Decatur creditor's attorney had objected to a reaffirmation agreement submitted by the Geraci firm weeks ago.

2. An objecting creditor's attorney in one of the six cases here, John Maloney, told the Court at the hearing that he had written Mr. Driscoll and cautioned him about the problems caused by this practice to the debtors and the creditors and that the Geraci firm is involved in a similar case in the Northern District of Illinois before Bankruptcy Judge Schwartz. (See attached letter from Maloney to Driscoll dated March 21, 1997.)

3. The Court in this case also holds Court in the Southern District of Illinois and is aware that the Geraci firm has unsuccessfully attempted to file reaffirmation agreements there that are unsigned by the creditors. (See attached correspondence between the Bankruptcy Clerk and the Geraci law firm.)

■ In considering the question of the necessity of a creditor's signature on reaffirmation agreements, this Court finds that the creditor's signature on a reaffirmation agreement serves two essential functions necessary in order for the agreement to comply with the provisions of 11 U.S.C. § 524. First, the creditor's signature provides notice to the Court and to anyone that might read the reaffirmation agreement that the creditor is aware of the agreement. Unsigned agreements have no indicia of awareness by the creditor that the agreement even exists, let alone that the creditor has assented to the agreement and agrees to be bound by its terms. The second function served by a creditor's signature on the reaffirmation agreement is that it provides clear and conspicuous proof that there is a binding agreement which both the creditor and the debtor have assented to and to which both agree to be bound. In the cases before the Court where the creditor has not signed the agreement, the Court finds that it is necessary to go outside of the document and rely on some unknown oral communication between the

parties in order to determine whether the creditor intended to be bound by the agreement in question. In most cases, the reaffirmation agreements contain terms which could not form a valid contract on an oral basis as they would be in violation of the Statute of Frauds. 740 ILCS 80/0.01, *et seq.*

■ The need for a creditor's signature on a reaffirmation agreement is evidenced by the significant amount of litigation and legislative inquiry concerning the reaffirmation process. In the 1984 Amendments to the Bankruptcy Code, as clarified by Amendments in 1994, the process for obtaining a valid reaffirmation agreement between debtor and creditor under 11 U.S.C. § 524 has been streamlined with the onus of protecting the rights of the debtor being shifted to debtor's counsel by virtue of the fact that hearings on reaffirmation agreements are now held where debtor's counsel signs an affidavit indicating that the debtor has been advised of all of the debtor's rights as required under 11 U.S.C. § 524, that the agreement in question is binding, and that the debtor is bound on the debt being reaffirmed as if the debtor never filed for bankruptcy. Additionally, the debtor's counsel must signify that the debtor's entry into the reaffirmation agreement in question does not pose an undue hardship on the debtor. Unfortunately, as a result of the streamlining of the reaffirmation process, problems have occurred in this District and elsewhere, including the filing of unsecured reaffirmation agreements where the debtors received nothing in return, the filing of reaffirmation agreements without creditors' signatures, and the filing of reaffirmation agreements purportedly in settlement of non-dischargeability proceedings where the potential exists for debtors to be strong-armed into an agreement that will not be reviewed by the Court. *See: In re Izzo,* 197 B.R. 11 (Bankr.D.R.I. 1996), and *In re Hovestadt,* 193 B.R. 382 (Bankr.D.Mass.1996), wherein those Courts determined that the review of all reaffirmation agreements was necessary in order to ensure that the Congressional intent with regard to its legislative shifting of oversight of reaffirmation agreements to debtors' counsel was upheld. Support for the position

taken by the Courts in Rhode Island and Massachusetts is found in the legislative history of § 524 of the Bankruptcy Code wherein it was stated that:

> Court review will constitute more than a rubber stamp of the agreement. The key consideration should be ensuring that the debtor will not suffer an undue hardship by the execution of any reaffirmation agreements. In short, the debtor's fresh start should not be impaired by any such agreements. *See:* 124 Cong. Rec. H 11096 (Sept. 28, 1978); S. 17413 (Oct. 6, 1978).

In the Bankruptcy Reform Act of 1994, Congress clarified that a separate hearing on reaffirmation agreements is not mandatory in order to reaffirm a debt where the debtor is adequately represented by counsel. H.R. Rep. 103–834, 103 Cong. 2nd Sess. 3 (Oct. 4, 1994); 140 Cong. Rec. H 10764 (Oct. 4, 1994). In exchange for this clarification of the process, Congress mandated that, in addition to the existing requirements, an attorney's affidavit must indicate that the debtor was fully advised of the ramifications of a reaffirmation agreement and any default thereunder.

 Reaffirmation agreements are unlike any other contractual agreement under the law, and no where else is the requirement that both parties sign the agreement more critical. Reaffirmation agreements are not binding unless all of the provisions of 11 U.S.C. § 524 are followed. *In re Hovestadt, supra,* at 386, citing *In re Noble,* 182 B.R. 854 (Bankr.W.D.Wash.1995). The Court, in *Noble,* stated:

> The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. Accordingly, strict compliance with the specific terms in section 524 is mandatory.

Thus, if a reaffirmation agreement fails to comply fully with § 524, it is void and unenforceable. *See:* 11 U.S.C. § 524(c). *See also: In re Artzt,* 145 B.R. 866 (Bankr.E.D.Texas 1992). The interests of both the debtors and the creditors must be protected, and this Court finds, as the Courts in *Izzo* and *Hovestadt* found, that it has an independent obligation to review reaffirmation agreements to ensure that the requirements of 11 U.S.C. § 524(c) are fully satisfied in each instance. The special need to protect the interests of creditors in the reaffirmation process and the voluntary nature of the process have long been recognized in this District, as set out in the Court's Opinion in *Decatur Earthmover Credit Union v. Glenn V. and Valerie C. Ellegood,* No. 92–CV–02068, Bankr.No. 91–70103 (C.D.Ill.1992), wherein U.S. District Judge Harold A. Baker stated:

> Nonetheless, how the bankruptcy court's order compelling the creditor to accept the debtor's reaffirmation squares with *In Re: Edwards,* 901 F.2d 1383 (7th Cir.1990) is the pivotal issue here. *Edwards* involved a Chapter 7 debtor who tried to retain possession of collateral without reaffirmation or redemption. The *Edwards* court held that § 521 of the Bankruptcy Code was a mandatory provision and that the debtor was required to do one of three things: (1) surrender the collateral; (2) redeem it for a lump sum; or, (3) enter into a reaffirmation agreement with the creditor. While the facts of this case are different from *Edwards* because the debtor is seeking reaffirmation of a secured debt, the discussion of the voluntary nature of reaffirmation agreements in *Edwards* is still binding on the lower courts in the Seventh Circuit. "In addition as the *Bell* court states, reaffirmation is supposed to involve a fully voluntary negotiation on both sides." *Id* at 1386, citing *In re Bell,* 700 F.2d 1053, 1056 (6th Cir.1983).

This Court finds it impossible to determine if full and free negotiations took place between the parties to a purported agreement which the creditor never signed.

In considering the reaffirmation agreements presently before the Court in the instant cases, the Court must find that none of these agreements satisfy the requirements of 11 U.S.C. § 524, nor do they satisfy the legislative intent behind that section. In the case of *In re Edwards,* 901 F.2d 1383 (7th Cir.1990), the Court of Appeals held that a Chapter 7 debtor must do one of three things concerning collateral:

1. redeem it by paying for it in a lump sum;

2. expressly reaffirm the debt underlying the collateral; or,

3. surrender the collateral to the secured creditor.

The Court affirmed both the Bankruptcy Court and the District Court which had held that, pursuant to 11 U.S.C. § 521, a debtor's option to either surrender, redeem, or reaffirm on secured indebtedness were exclusive because both the language of the Bankruptcy Code and the intent of Congress contradict the view that a debtor may retain possession of collateral while continuing to make regularly scheduled payments absent the creditor's consent. The Court, in *Edwards,* further pointed out, where as here a debtor is allowed to retain property while keeping up installment payments without a valid reaffirmation agreement, the debtor has no personal liability and is, as such, in a better condition than if he had filed bankruptcy. The end result in such a situation is that, if the debtor later defaults on the payments, the secured creditor would have a cause of action to compel turnover of the collateral. However, the creditor would lack the ability to pursue the debtor or debtors personally pursuant to the discharge provisions of § 524. Whereas, if the creditor and debtor had negotiated and entered into a valid reaffirmation agreement, the debtor would be bound as if he had never gone through bankruptcy, and the creditor would have a right not only to pursue its collateral, but to pursue the debtor for any deficiency on its loan balance after credit for the value of the collateral. The Court can also envision a scenario where debtors could continue making installment payments, the sum of which greatly exceeded the value of the subject collateral having a direct impact on their ability to obtain a fresh start. If the debtors had negotiated and entered into a valid reaffirmation agreement, they could have had an opportunity to reduce payments in accordance with the value of the security in question.

In conclusion, the Court finds that, while most of the reaffirmation agreements presently being filed by the Geraci firm are in proper order and signed by both the debtor and creditor, there is an alarming increase in the number of reaffirmation agreements being filed without the signature of the creditor. At hearing on April 24, 1997, this Court clearly indicated that reaffirmation agreements which were not signed by the creditor were not enforceable and that the agreements in the cases presently before the Court would not be approved. Nonetheless, within one week of the hearing on April 24, 1997, Mr. Driscoll filed reaffirmations in 22 other cases that bore no signature of the affected creditor and, in fact, some did not even identify the creditor.[2]

In keeping with its obligation, pursuant to 11 U.S.C. § 524, to protect both the interests of debtors and creditors in the reaffirmation process, the Court must find that the reaffirmation agreements presently before it, in the above-captioned cases, are void and unenforceable as set forth above. As such, the Court finds that, in order to retain the collateral involved in each of the reaffirmation agreements presently before the Court, the debtors must either negotiate and enter into a valid reaffirmation agreement or redeem the collateral by payment of its value in a lump sum. Otherwise, the debtor must surrender the collateral. The debtors will be given a period of 30 days from the date of this Opinion to choose one of the three exclusive options available to them and to file appropriate documents with the Court indicating their choice.

---

**2.** A separate Order will be entered on these 22 cases.

## MALONEY & DAVIS
### Attorneys At Law

135 WEST MAIN STREET
P.O. BOX 296
URBANA, ILLINOIS 61801-0296

JOHN E. MALONEY, P.C.
FRANCIS J. DAVIS, P.C.

TELEPHONE: (217) 384-7111
FAX: (217) 384-4206

March 21, 1997

**FILED**

TIME

APR 3 0 1997

HARDIN W. HAWES, Clerk
U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

PETER F GERACI
ATTORNEY AT LAW
55 E MONROE STE 3400
ATTN BRIAN DRISCOLL
CHICAGO IL 60603

RE: Michael T. and Molly D. Kleppin
Bankruptcy number: 97-90127

Dear Brian:

I am not going to make a "big deal" about this since I know you, however, I wanted to pass on to you my comments about the form "automobile reaffirmation agreement".

First, let me note that the discovery of this situation (my client faxed to me a copy of the "automobile reaffirmation agreement" and my office could not find a corresponding file) has become the subject of controversy (enclosed is a copy In re Halcomb). The term "agreement" means that there is a contract. A contract implies that there is an offer and an acceptance. The problem here is that the so-called "agreement" looks very much like only an offer. It creates problems as to whether the silence of the creditor has caused this to be accepted. This creates some practice problems.:

 1. When is the "agreement" effective?

 a. Does silence for 10 days mean acceptance? 15 days? 30?

 b. Is it accepted immediately but subject to the creditor changing its mind?

 c. What happens, if the bankrupt is in default under the original contract? can the creditor still declare a default?

 d. What happens if the file goes to the attorney and the reaffirmation to the creditor? what happens when this document never catches up? corporations appear through attorneys! Is this an attempt to avoid the creditor's attorney?

2. Is this so-called "agreement" simply a notice contemplated under Code Section 521? what do we mean by "perform his intention" (521(2)(b)?

3. What must a creditor do to "un-do" a reaffirmation for someone who remains in default?

There are also some drawbacks from the debtor's point of view:

a. This might allow the time to rescind to be shortened. In this case, you filed the "agreement" on March 6th. If it wasn't filed until later, the debtor would get longer to change his mind; and,

b. This might allow a creditor to declare a default when otherwise it would be unable to do so.

Generally, Brian, contracts are supposed to provide certainty to the parties. You may have estopped yourself from claiming there was not a contract, but such "agreement" can hardly be binding upon the creditor until his silence and acquiesces constitutes an acceptance.

In no case that I have observed has your firm sent out the notices required under 521. Sending a statement of intention initially to the creditor will save you a lot of phone calls. This gives the creditor an opportunity to review your intentions, prepare an agreement for you, and mail it to you rather than fighting your telephone system. This saves you time and your client money.

Given your review of this letter, and your understanding that in the future statements of intentions go to the creditor who hires us to prepare reaffirmation agreements, we accept this as a reaffirmation in the Kleppin case. You might consider an alternative internal procedure in the future.

Hope you are doing well!

Sincerely,

JOHN E. MALONEY

JEM:skd

Encl

cc - BANKILLINOIS
 100 W UNIVERSITY
 ATTN JIM MUELLER
 CHAMPAIGN IL 61820

P.S. You might want to file this letter in the cause, for otherwise Judge Fines may very well require a 524 hearing.

John

g:\apps\wps1\geraci\holcomb.brf

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In re ( Case No. 96 B 23844

 (

GARLAND R. HOLCOMB and ( Chapter 7

SHIRLEY A. HOLCOMB (

 Debtor(s) ( Judge John D. Schwartz

 (

---

## RESPONSE AND
## MEMORANDUM IN OPPOSITION TO THE MOTION
## TO MODIFY AUTOMATIC STAY AND FOR OTHER RELIEF
## BY FIRST MIDWEST BANK

The debtors, by and through counsel, submit to the court the following Response and Memorandum in Opposition to the Motion to Modify Automatic Stay and For Other Relief by First Midwest Bank ("First Midwest" or "the creditor" hereinafter):

In its motion, First Midwest insists that the reaffirmation signed by the debtors in this case is deficient because it was not signed by the creditor. Section 524(c) provides that a reaffirmation agreement "is enforceable only to any extent enforceable under applicable nonbankruptcy law." Courts traditionally have interpreted the term "applicable nonbankruptcy law" to include federal and state nonbankruptcy law. See, e.g., Patterson v. Shumate, 504 U.S. 753, 758 (1992); In re Harline, 950 F.2d 669, 674 (10th Cir. 1991); Anderson v. Raine (In re Moore), 907 F.2d 1476, 1477-79 (4th Cir. 1990).

The Illinois statute particularly relevant to this proceeding, 810 ILCS 5/2-201, provides in pertinent part:

> Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or

defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Prevailing business practice is fully consistent with this provision. For example, most credit card agreements and automobile sales contracts are signed only by the applicants/debtors/buyers, but not by creditors. Presumably, First Midwest Bank is not arguing that those who use its credit cards or who are purchasing vehicles through its financing do not need to pay the debt because the underlying agreements are unenforceable for lack of signature by any agent or representative of First Midwest Bank. Absurd as it sounds, that is the very conclusion First Midwest Bank's argument compels in this proceeding.

In the instant case, the reaffirmation agreement regarding the debt to First Midwest and signed by the debtor provides:

Amount to be reaffirmed: **BALANCE OWED PURSUANT TO ORIGINAL TERMS OF THE LOAN AGREEMENT.** The monthly payments shall remain the same.

(Emphasis in the original). The creditor does not allege that such an agreement, which was executed for its benefit, would in any way prejudice or compromise its rights; nor does it allege a lack of intention or voluntariness to enter into this type of agreement.

The creditor might argue that federal bankruptcy law preempts state law for the purposes of section 524(c). The truth of the matter is that neither the Bankruptcy Code, nor the Federal Rules of Bankruptcy Procedure, nor published case law (including Matter of Edwards, 901 F.2d 1383 (7th Cir. 1990) and In re Bell, 700 F.2d 1053 (6th Cir. 1983,

**The Law Offices of Peter Francis Geraci, J.D.**
Bankruptcy & Injury Attorneys

55 East Monroe Street, Suite 3400 Chicago, Illinois Telephone (312) 332-1800 Fax (312) 332-6354

March 17, 1997

Mr. Thomas J. Mackin, Clerk of Court
U.S. Bankruptcy Court for the Southern District of Illinois
301 W. Main Street
Benton, IL 62812

RECEIVED

MAR 2 0 1997

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT, ILLINOIS

RE: In re Raymond C. Reynolds and Tonya S. Reynolds, Case No. 97-60033

Dear Mr. Mackin,

We represent the debtors in the aforementioned case. On March 10, 1997, we tendered an Automobile Reaffirmation Agreement with Lerna Bank, signed by the debtors, for filing at the clerk's office. The clerk's office issued a Notification of Return of Document(s) on the same day, refusing to file said reaffirmation agreement on the grounds that "[d]ocument not signed/or facsimile signature. No Creditor Signature."

We would like to draw your attention to the fact that neither the Bankruptcy Code, nor the Federal Rules of Bankruptcy Procedure, nor published case law, nor the local rules of this court requires a creditor's signature for a reaffirmation agreement to be enforceable. Furthermore, pursuant to Fed. R. Bankr. P. 5005(a), "[t]he clerk shall not refuse to accept for filing any petition or other paper for the purpose of filing solely because it is not presented in proper form as required by these rules or any local rules or practices." Therefore, the clerk's office has no authority to refuse to accept the reaffirmation agreement for filing.

The debtors indicated their intention to reaffirm the debt owed on the automobile on their Chapter 7 Individual Debtor's Statement of Intention. Under 11 U.S.C. § 521, they are required to perform their intention with respect to such property within 45 days after the filing of the Statement of Intention. In order to comply with the Bankruptcy Code, it is imperative that they file the reaffirmation agreement timely.

Therefore, we request that your office accept the reaffirmation agreement and file it as of the date when it was originally tendered, that is, March 10, 1997.

Thank you for your prompt attention to this matter.

Sincerely,

Xiaoming Wu, J.D.

Encl.

**UNITED STATES BANKRUPTCY COURT**
FOR THE SOUTHERN DISTRICT OF ILLINOIS
OFFICE OF THE CLERK
P.O. BOX 309
750 MISSOURI AVENUE
EAST ST LOUIS, ILLINOIS 62202
PHONE: (618)–482–9400

THOMAS J. MACKIN
CLERK OF COURT

WAYNE A. BANNERT
CHIEF DEPUTY CLERK

March 20, 1997

Xiaoming Wu, J.D.
55 East Monroe Street, Suite 3400
Chicago, IL 60603

RE: Reaffirmation Agreements

Dear Attorney Wu:

The reaffirmation agreement you resubmitted for filing in the case of Raymond C. Reynolds and Tonya S. Reynolds, Case No. 97-60033, is attached hereto for compliance with the deficiency notice. That is, the creditor's and the debtors' signatures are required on all reaffirmation agreements filed in this Court.

It is the Court's position that to be legally binding on both parties to a reaffirmation agreement, it must be signed by both parties to the agreement. If you can furnish the Court with legal authority to the contrary, I would be pleased to show it to the Court for you.

Sincerely,

THOMAS J. MACKIN
Clerk

Attch: Deficient Reaffirmation Agreement

---

### ORDER

For the reasons set forth in an Opinion entered on the 7 day of May 1997;

IT IS HEREBY ORDERED that:

A. In the case of Charles R. Jones, Bankruptcy No. 97–90025, approval of the reaffirmation agreement filed on January 28, 1997, with Villa Grove State Bank is *DENIED*;

B. In the case of Ralph Moery and Betty Moery, Bankruptcy No. 97–90029, approval of the reaffirmation agreement filed on February 27, 1997, with the State Bank of Bement, is *DENIED*;

C. In the case of David M. Kirchberg, Bankruptcy No. 97–90123, approval of the reaffirmation agreement filed on March 6, 1997, with American General Finance is *DENIED*;

D. In the case of Ronald A. Orr and Margaret K. Orr, Bankruptcy No. 97–90126, approval of the reaffirmation agreement filed on March 6, 1997, with Ford Motor Credit is *DENIED*;

E. In the case of Michael T. Kleppin and Molly D. Kleppin, Bankruptcy No. 97–90127, creditor withdrew its objection, and approval of the reaffirmation agreement filed on

March 6, 1997, with Bank Illinois is *AL-LOWED*;

F. In the case of Chad E. Turner, Bankruptcy No. 97–90016, approval of the reaffirmation agreement filed on February 20, 1997, with Busey Bank is *DENIED*, and approval of the reaffirmation agreement filed on February 20, 1997, with Soy Capital Bank is *DENIED*;

G. Debtors in the above-captioned cases shall have 30 days from the date of this Order within which to file a valid reaffirmation agreement signed by the affected creditor, to redeem the collateral by payment of its value in a lump sum, or to surrender the collateral to the secured creditor; and,

H. All reaffirmation agreements filed with the Court must bear the signature of the affected creditor.