**In re Elizabeth LINDLEY, Debtor.**

**Bankruptcy No. 97 B 10421.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 1998.

Peter Francis Geraci, Chicago, IL, for Debtor.

Donald L. Newman, Chicago, IL, for Respondent.

Thomas B. Sullivan, Palos Heights, IL, Chapter 7 Trustee.

Dean Harvalis, Chicago, IL, Asst. Trustee.

*MEMORANDUM OPINION ON ORDER OF COURT TO CONSIDER RULE 9011 SANCTIONS AGAINST GERACI FIRM ATTORNEYS*

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter is before the Court on the Court's own motion initiated under Fed. R.Bankr.P. 9011(c)(1)(B) to consider whether sanctions should be imposed against attorney Peter Francis Geraci or other attorneys of his firm under Fed.R.Bankr.P. 9011 for filing purported "negotiated" reaffirmation "agreements" without the signatures or prior express consent of the creditors in violation of Bankruptcy Code requirements. For reasons more fully stated below and pursuant to order to be entered, sanctions under Rule 9011(c)(2) will not be entered, other than a reprimand, against attorney Geraci or attorneys of his firm at this time because he has cured the results of prior practice and taken steps to prevent a recurrence by that firm. Moreover, no affected creditor has requested sanctions.

### FACTS

On April 7, 1997, Elizabeth Ann Lindley ("Debtor") filed her voluntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.* Debtor is represented by attorneys in Mr. Geraci's law firm. On July 22, 1997, Hinsdale Bank filed a motion to set aside and annul two purported automobile reaffirmation agreements filed herein on April 15, 1995, and June 5, 1997, by Geraci's firm on behalf of Debtor. The two documents in question, signed only by Debtor and Debtor's counsel, attempted to reaffirm the "balance owed pursuant to original terms of the loan agreement" to the Hinsdale Bank. Not only were they unsigned by the creditor, but they also contained no space wherein the creditor could sign or otherwise indicate consent. Moreover, neither were ever sent to Hinsdale Bank or its counsel prior to their being filed with the bankruptcy court, nor was Hinsdale Bank or its counsel notified of the purported agreements at any time. Hinsdale Bank only discovered the existence of the purported reaffirmations upon a re-

view of the court file by its counsel. In addition, the filed documents each contained a paragraph entitled "Declaration by Debtor's Attorney." This paragraph is required by 11 U.S.C. § 524(c)(3):

> The undersigned declares that he is the attorney that represented the Debtor during the course of the *negotiation* of this reaffirmation agreement and such agreement represents a fully informed and voluntary agreement by the Debtor and it does not impose an undue hardship on the Debtor or a dependant of the Debtor.

(Emphasis added). As stated, Hinsdale Bank and representatives were never contacted by Mr. Geraci's law firm, and thus never engaged in any negotiations. On motion of the Bank, an order was therefore entered annulling the two purported reaffirmation agreements on August 8, 1997. Hinsdale's counsel declined to pursue sanctions, and this Court *sua sponte* ordered a hearing into possible violations of Rule 9011. A hearing was held.

The following facts are not in dispute:

What happened in this case results from a routine practice by lawyers in Mr. Geraci's firm. For some time, lawyers in that law firm have been filing the same form of purported reaffirmation "agreements" in many of their Chapter 7 bankruptcy cases. During the hearing which was ordered *sua sponte* under Fed.R.Bankr.P. 9011, Mr. Geraci filed materials consisting of letters from a number of creditors for which these unilateral reaffirmations were filed in cases before the undersigned judge in 1997, and in those letters the creditors retroactively ratified the earlier purported agreements. Geraci also showed that in other cases before the undersigned, some creditors did join in valid reaffirmations. Geraci also has taken affirmative steps to withdraw remaining unilateral "reaffirmations" filed in cases before the undersigned but never consented to by the creditors. Finally, he filed a pleading representing that the attorneys in his firm have been instructed by him not to use or file the unilateral reaffirmations ever again in any bankruptcy court or case.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## DISCUSSION

Sanctions against Geraci and lawyers of his firm are being considered for their repeated filing of reaffirmation agreements signed solely by the debtor without consent of the creditor wherein they represent that they "negotiated" with creditors for the "agreements." As discussed in detail below, in order for a reaffirmation agreement to be valid, it must be signed, ratified or consented to by the affected creditor. Mr. Geraci disagrees, and offers a number of arguments against the imposition of sanctions. His arguments are unpersuasive, but since the problem is cured in cases before the undersigned and for all other cases to be filed anywhere in any bankruptcy, Rule 9011 sanctions are not appropriate except for a reprimand. However, it is appropriate for these lawyers to understand why other sanctions will lie for any repetition of this practice.

Geraci correctly argues that Rule 9011 cannot be invoked to punish for a good faith argument for an extension, modification or reversal of existing law. Rule 9011 provides:

> Every petition, pleading, written motion, and other paper, ... shall be signed by at least one attorney of record in the attorney's individual name ... By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, de-

fenses, and all other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support . . . .

Fed.R.Bankr.P. 9011.[1]

Mr. Geraci argues that it was appropriate to rely on a "minority approach" to unilateral reaffirmation agreements where "neither the Seventh Circuit nor the bankruptcy judges for the Northern District of Illinois had addressed the question." Geraci Response at 2. But he cites no cases supporting his asserted minority approach, and actual authorities are to the contrary.

Both the Seventh Circuit and at least two bankruptcy judges for the Northern District of Illinois have addressed the issue. In *In re Hasek*, No. 96B23346, Slip op. (Bankr.N.D. Ill. June 26, 1997), a case involving Geraci and his law firm, Judge Ginsberg expressly stated that reaffirmation agreements signed solely by a debtor are not enforceable. Moreover, Chief Bankruptcy Judge Schwartz stated in open court on December 20, 1996, in front of Mr. Geraci, that he considered it inappropriate to file unilateral reaffirmation agreements. December 20, 1996, Transcript at 6–7. Finally, the Seventh Circuit clearly stated that "reaffirmation is supposed to involve a fully voluntary negotiation on *both sides*." *Matter of Edwards*, 901 F.2d 1383, 1386 (7th Cir.1990) (emphasis added). Geraci's unilateral reaffirmations disregarded that Seventh Circuit ruling. Moreover, in *In re Turner*, the bankruptcy judge sitting in the Central District of Illinois ruled that Geraci's unilateral reaffirmations were not valid. 208 B.R. 434 (Bankr.C.D.Ill.1997), *aff'd*, *Turner v. Hopper*, No. 97–CV–2149 (C.D.Ill. Sept. 29, 1997).

Geraci contends that no direct authority existed at the time of filing the purported reaffirmations herein as to whether a unilateral reaffirmation could be valid. He also argues that at the time he filed the initial reaffirmation, "no published case in the country had held that a reaffirmation agreement must be signed by the affected creditor." Geraci Reply at 3. *Turner* was decided on May 7, 1997, and *Hasek* was decided on June 26, 1997. As stated, the purported reaffirmations were filed herein on April 15, 1997, and June 10, 1997. Thus, Geraci was aware of the most recent opinions denying legitimacy of unilateral reaffirmations prior to filing of the second reaffirmation document in this case. Moreover, while the Seventh Circuit opinion in *Edwards* (decided long before either of the reaffirmations were filed) did not expressly state that the reaffirmations must be signed by the affected creditor, it clearly held that the creditor must consent. *See Edwards*, 901 F.2d at 1386; *In re Whatley*, 16 B.R. 394, 396 (Bankr.N.D.Ohio 1982); *Hasek*, Slip op. at 7; *Turner*, 208 B.R. 434. Geraci did not, in the cases discussed here, attempt to get the affected creditors' consent in advance. Rather, his firm filed reaffirmation "agreements" without creditor consent and put the burden on creditors to employ counsel to come into court and object. December 20, 1996, Transcript at 6–7. That is what Hinsdale Bank was required to do here.

 In a reaffirmation agreement, a debtor agrees to repay all or part of a dischargeable debt. *Matter of Duke*, 79 F.3d 43, 44 (7th Cir.1996); *In re Saunders*, 169 B.R. 192, 195 (Bankr.W.D.Mo.1994) ("A reaffirmation agreement legally binds debtors to pay pre-petition debts that would otherwise be dischargeable."). Section 524 of the Bankruptcy Code provides limitations on a debtor's ability to enter into reaffirmation agreements on discharged debts. For an agreement to be valid it must conform to all the requirements of section 524(c) and (d). 4 *Collier on Bankruptcy*, ¶ 524.01 (Matthew Bender 15th Ed. Revised 1996). An agreement to pay a discharged debt which does not conform with these subsections is invalid. *Id.* at ¶ 524.04. The elements of a valid reaffirmation agreement are:

(1) the debtor must enter into a reaffirmation agreement prior to discharge and file the agreement with the court; (2) the

---

1. Rule 9011 is substantially the same as Fed. R.Civ.P. 11. Thus case law interpreting either

provision is appropriate.

agreement must clearly and conspicuously state that the debtor may rescind the agreement prior to discharge or within sixty (60) days after the agreement is filed with the court, whichever is later; (3) the agreement is accompanied by an affidavit of the debtor's attorney, if the debtor is represented, with a declaration that the agreement is an informed and voluntary agreement by the debtor and that the reaffirmed debt does not impose an undue hardship; (4) the debtor has not rescinded the agreement at the time of discharge or within sixty (60) days after it is filed with the court; and (5) compliance with the procedural requirements of § 524(d).

*In re Walker,* 180 B.R. 834, 846, n. 20 (Bankr.W.D.La.1995). In addition, if debtor is proceeding *pro se,* court approval will not be granted if the agreement imposes an undue hardship on the debtor and is not in the debtor's best interest. *Id.* This last requirement does not apply where a debt is a consumer debt secured by real property. *Id.* The foregoing are specified in the Code delineated requirements under §§ 524(c) and (d).

█ For a reaffirmation "agreement" to be valid, both the creditor and the debtor must consent. An "agreement" is defined as:

[a] meeting of two or more minds; ... a concord of understanding and intention between two or more parties with respect to the effect upon their relative rights and duties, of certain past or future facts or performances. The consent of two or more persons concurring respecting the transmission of some property, right, or benefits, with the view of contracting an obligation, a mutual obligation.

Black's Law Dictionary, 6th Ed. at 67. It follows that, without the consent of both or all the parties, there can be no agreement between those parties. *See Turner v. Hopper,* No. 97–CV–2149 at 2.

Much has been written recently on the issue of whether a reaffirmation agreement is valid if the creditor does not consent. "Reaffirmation agreements are unlike any other contractual agreement under the law, and nowhere else is the requirement that both parties sign the agreement more critical.

Reaffirmation agreements are not binding unless all of the provisions of 11 U.S.C. § 524 are followed." *Turner,* 208 B.R. at 437 (citing *In re Hovestadt,* 193 B.R. 382, 386 (Bankr.D.Mass.1996)). While it is true that the limitations of § 524 are primarily intended to protect the unwary debtor, "[t]he special need to protect the interest of creditors in the reaffirmation process and the voluntary nature of the process have long been recognized in [Illinois]." *Id.* at 437. The court in *Turner* found that, without the creditor's signature, it was "impossible to determine if full and free negotiations took place between the parties...." *Id.*

█ "Section 524(c) refers to 'an agreement between a holder of a claim and the debtor'. No authorization is given the Bankruptcy Court to require a creditor, or a debtor, to enter into a reaffirmation agreement." *Whatley,* 16 B.R. at 396. A debtor has no right to reaffirm a debt unilaterally. *In re Schmidt,* 64 B.R. 226, 229 (Bankr.S.D.Ind. 1986). A creditor, for any reason, is free to reject an offer to reaffirm a debt. *In re Bell,* 700 F.2d 1053, 1056 (6th Cir.1983) (section 524(c) envisions execution of "agreement" which, by definition, is voluntary undertaking); *Matter of Brady,* 171 B.R. 635, 639 (Bankr.N.D.Ind.1994) (the offer of reaffirmation is an "invitation to negotiation"; either party may decline to reaffirm for any reason). The debtor has a choice. A debtor may elect to reaffirm, if the creditor agrees, or may redeem the property, return the property, or convert to a Chapter 13. *See Brady* (citing *Edwards,* 901 F.2d at 1387; 11 U.S.C. §§ 521 and 1325(a)(5)(B)(I) and (ii)). But the debtor cannot force a creditor to submit to the debtor's wishes.

█ A debtor who retains property without a valid reaffirmation agreement has no personal liability, as the debtor's personal debt is discharged in a Chapter 7 bankruptcy. However,

[I]f the creditor and debtor had negotiated and entered into a valid reaffirmation agreement, the debtor would be bound as if he had never gone through bankruptcy, and the creditor would have a right not only to pursue its collateral, but to pursue

the debtor for any deficiency on its loan balance after credit for the value of the collateral. *Turner*, 208 B.R. at 438. Where no valid reaffirmation agreement has been filed with the court, "the creditor can simply initiate proceedings to foreclose or exercise self-help procedures to reach its collateral. The automatic stay no longer exists [after the discharge].... This is true regardless of whether the debtor is current on the reaffirmation agreement or not." *Hasek*, Slip op. at 6 (citing *Bell*, 700 F.2d 1053).

Mr. Geraci argues under Illinois law that one signature may sometimes be sufficient for a valid contract. For example, under the Illinois Uniform Commercial Code in a contract for the sale of goods over $500, only the party against whom enforcement is sought is required to sign the document. However, a reaffirmation agreement is not a contract for the sale of goods. Moreover, while under non-bankruptcy commercial law only one party need sign in order for a contract to be valid, both parties must still agree.

Geraci also points out that "most credit card arrangements and automobile sales contracts are signed only by the applicants/debtors/buyers, but not by creditors." Geraci Reply at 5. However, in such contracts, the creditor's acceptance is generally indicated by performance. For example, with a credit card agreement, the only signature required for each credit charge is that of the card holder. But the creditor's acceptance there is indicated by issuing of a credit card and the continued extension of credit. However, unless a reaffirmation agreement is signed or at least authorized by it, a creditor knows nothing about the so-called "agreement" and may even be unaware that a bankruptcy has even been filed, and unaware that it did not have to accept payment.

Mr. Geraci also argues that his unilateral reaffirmations comply with the bankruptcy code. By definition, they cannot because they do not demonstrate the entry into an agreement under § 524. As stated above, an inherent element of a reaffirmation agreement is that it be an agreement and a meeting of the minds of two or more parties. Both the debtor and the creditor must agree

to reaffirm the debt; without such agreement, the reaffirmation cannot be valid. This agreement can be indicated by a signature on the reaffirmation form or through a letter from the creditor or its counsel approving the reaffirmation or acknowledging consent. (There are other requirements under § 524 that may not be satisfied by after-the-fact ratification, but they are not in issue in this Rule 9011 proceeding.) Without such consent, there is no valid reaffirmation.

Finally, Geraci argues that his position is supported by § 521 which requires a debtor, within a specified time period, to declare whether the debtor will reaffirm the secured debt or redeem or surrender the property. Geraci argues that the rulings against him in *Hasek* and *Turner* conflicted with this requirement by allowing a creditor to control or frustrate the reaffirmation process. But, as earlier shown, that is exactly what the Bankruptcy Code allows. A debtor cannot force a creditor into a reaffirmation merely by declaring intent to reaffirm.

Geraci further argues that creditors frequently add $300 to $500 in attorney's fees in the terms of the reaffirmations to cover fees for reviewing those agreements. However, a number of authorities, even including those cited by Geraci, recognized the lawful nature of this practice. *See In re French*, 185 B.R. 910, 913 (Bankr.M.D.Fla.1995) (citing *In re Hutchins*, 99 B.R. 56, 59 (Bankr.D.Colo. 1989); *In re Pendlebury*, 94 B.R. 120, 123 (Bankr.E.D.Tenn.1988)). After all, a negotiation requires at least two parties to bargain over their respective interests, and creditors have an interest in recovering reasonable fees incurred by the negotiation, although some may at times abuse their bargaining leverage in this regard.

As stated, a debtor has the choice whether to negotiate a reaffirmation, redeem or surrender the property, or file under or convert to Chapter 13 of the Bankruptcy Code. If the debtor does not like the terms of the negotiated reaffirmation, that debtor may elect a different option. A debtor would not violate the terms of § 521 by initially electing to reaffirm and then engaging in good faith but unsuccessful negotiations to-

ward that reaffirmation. *French,* 185 B.R. at 914. Geraci cites *French* for the proposition that § 521 does not give the creditor broad leverage in negotiating a reaffirmation. However, *French* expressly states that negotiations for a reaffirmation may include attorney's fees, principal due, rate of interest, or non-monetary covenants. *Id.* at 913. The debtor is free to reject any and all of these proposals (although many have economic pressure not to do so) just as a creditor is free to reject any and all of a debtor's proposals.

■ Moreover, Geraci's attorneys sign declarations within these unilateral reaffirmations falsely stating that the reaffirmation was the result of negotiations. Geraci argues that his attorneys signed these declarations "upon written instructions by the debtor after discussing the case with co-counsel." He adds the assertion that "[t]he reaffirmations at issue in this case involved as much negotiation as involved in the reaffirmations filed by other practitioners on behalf of debtors *and* creditors." Geraci Response at 14–15 (emphasis in original). He thereby both gratuitously insults other lawyers who enter into valid agreements and disregards the requirement of consent, whether actual or implied, to any agreement. When lawyers in Geraci's firm fail to contact a creditor to solicit agreement, they have not entered into negotiations with that creditor. By falsely representing that they "negotiated," lawyers of the Geraci firm have violated Rule 9011.

Finally, Geraci has submitted herein a copy of his brief filed before the Seventh Circuit on this very issue pending in another case. The Circuit will pass on issues in that brief, but most arguments contained therein were also discussed in Geraci's filings here.

■ The only argument yet to be addressed is Geraci's argument that the bankruptcy court lacks statutory authority to approve or disapprove a reaffirmation agreement executed by a represented debtor. Geraci argues that Bankruptcy Code amendments to § 524 eliminated court approval where a debtor is represented by counsel. Thus, according to Geraci, bankruptcy courts have lacked this authority after 1984. Geraci argues that the legislative history prior to 1984 is irrelevant as it has been "superseded by the 1984 and 1994 amendments." Seventh Circuit Brief at 6. Geraci, however, fails to cite any legislative history from the period he considers relevant. The Senate Report which accompanied the Bankruptcy Amendment Act of 1984 showed that the amended section "provides for immediate effectiveness of the [reaffirmation] agreement upon its filing with the court, *subject to the court's review of the agreement pursuant to the exercise of its equitable jurisdiction.*" Senate Report, reprinted in Norton Bankruptcy Rules Pamphlet 1997–1998 Edition, 572 (emphasis added). Thus, it seems that Congress never removed the court's power to approve or disapprove a reaffirmation agreement after it is filed, and amendments to § 524 certainly did not expressly do so.

## *CONCLUSION*

■ The unilateral reaffirmation "agreements" filed by Mr. Geraci's office do not comply with the Bankruptcy Code. His debtors cannot force creditors into reaffirmation agreements without their consent. Those documents are therefore not agreements at all. Moreover, the signed declarations by debtor's attorneys stating that they represented the debtor during the course of negotiations concerning the reaffirmation agreements were false.

Geraci's firm has repeatedly filed invalid reaffirmation "agreements" which were never agreed to by the creditor. He and his lawyers misrepresented in the filed documents that they had been "negotiated" with the creditors and that each creditor had entered into the "agreement." Those representations were not correct and violated Fed. R. Bankr.P. 9011.

However, the problem has been cured at least for cases going back for one year filed before the undersigned and cured for the future in all bankruptcy cases filed in any court by a change in practice. Since Hinsdale Bank through its counsel expressly declined to pursue sanctions and the problem has apparently been solved for the future, monetary sanctions are not now appropriate.

However, Mr. Geraci will be reprimanded for the prior practice and held responsible to ensure that no more unilateral reaffirmation agreements are filed by his office in any bankruptcy court.