ILANA DIAMOND ROVNER, Circuit Judge.
 

 This appeal calls upon us to decide whether a debtor’s unilateral reaffirmation of a pre-petition debt constitutes a valid reaffirmation “agreement” for purposes of 11 U.S.C. § 524(c). We agree with the bankruptcy and district courts that it does not.
 
 See In re Turner,
 
 208 B.R. 434 (Bankr.C.D.Ill.), aff
 
 'd by Turner v. Hopper,
 
 No. 97 C 2149, Order (C.D.Ill. Sept. 29, 1997) (unpublished).
 

 I.
 

 Section 524 of the bankruptcy code enables the debtor in a Chapter 7 proceeding to reaffirm a pre-petition debt that is otherwise dischargeable by agreeing to pay all or part of that debt. 11 U.S.C. § 524(c);
 
 see In re Duke,
 
 79 F.3d 43, 44 (7th Cir.1996).
 
 *715
 
 If the debt were discharged, the debtor would be relieved of all personal liability, but the creditor would be free to take any collateral securing the debt. Reaffirmation thus permits the debtor who cannot pay off the debt immediately to continue making periodic payments as before and to keep the property for which the debt was incurred (typically something like a car). Studies suggest that anywhere from nineteen to forty-two percent of debtors seek to reaffirm at least one pre-petition debt. Karen Gross,
 
 Perceptions and Misperceptions of Reaffirmation Agreements,
 
 102 Com. L.J. 339, 34647 (1997).
 

 Attorney Peter Francis Geraci and his associates file thousands of bankruptcy cases annually in the bankruptcy courts of this circuit. The Geraci firm typically agrees to provide a complete package of bankruptcy services to its client in exchange for a set fee. Consequently, the firm has the incentive to minimize the amount of time its attorneys must devote to any one ease. Toward that end, the firm began several years ago to file form unilateral reaffirmations drafted by the firm and executed without notice to or the consent of the creditors involved.
 

 In each of the six Chapter 7 bankruptcy cases underlying this appeal, for example, the Geraci firm filed a document entitled “REAFFIRMATION AGREEMENT” or “AUTOMOBILE REAFFIRMATION AGREEMENT” in which the debtor purported to “reaffirm[ ] and agree[ ] to pay” a pre-petition installment loan “according to its original terms and conditions notwithstanding his/her petition in bankruptcy....” The amount purportedly reaffirmed in each instance was the “balance owed pursuant to [the] original terms of the loan agreement,” with the monthly payments remaining the same. In each instance, the debtor or debtors signed the reaffirmation, but the creditor did not; in fact, no space on the document was provided for the signature of the creditor’s representative. An attorney from the Geraci firm also signed each of the reaffirmations, thereby certifying (as required by 11 U.S.C. § 524(e)(3)) “that he is the attorney that has represented the Debtor during the course of the negotiation of this reaffirmation agreement and such agreement represents a fully informed and voluntary agreement by the Debtor and it does not impose an undue hardship on the Debtor or a dependent of the Debtor.” But so far as the record reveals, no negotiations with any of the creditors involved actually preceded the debtors’ execution of these agreements, and in each instance the Geraci firm filed the completed “agreement” without notifying creditor that the reaffirmation had been executed or filed.
 

 Upon learning that reaffirmation agreements had been filed in these six cases without the creditor’s signature, the bankruptcy court consolidated the cases for purposes of a hearing to determine whether the agreements were valid. The court subsequently issued a written opinion concluding that, absent the creditor’s signature evidencing consent to the reaffirmation, the type of unilateral reaffirmation “agreement” filed by the Geraci firm was invalid.
 
 In re Turner,
 
 208 B.R. 434 (Bankr.C.D.Ill.1997) (Fines, J.). “Reaffirmation agreements are unlike any other contractual agreement under the law,” the bankruptcy judge observed, “and nowhere else is the requirement that both parties sign the agreement more critical.”
 
 Id.
 
 at 437.
 

 The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts.f...] [Accordingly,] strict compliance with the specific terms in section 524 is mandatory.
 

 Id.,
 
 quoting
 
 In re Noble,
 
 182 B.R. 854, 856 (Bankr.W.D.Wash.1995) (in turn quoting
 
 In re Getzoff,
 
 180 B.R. 572, 574 (B.A.P. 9th Cir.1995)). The creditor’s signature brings a reaffirmation agreement into compliance with the terms of the statute in two key ways, Judge Fines reasoned. First, it evidences the creditor’s awareness of the reaffirmation. 208 B.R. at 436. Second, “it provides clear and conspicuous proof that there is a[n] ... agreement [to] which both the creditor and the debtor have assented ... and to which both agree to be bound.”
 
 Id.
 
 Because each of the “agreements” in the six consolidated eases lacked the creditor’s signature, the court declared them void and unenforceable.
 
 Id.
 
 at 438. Consistent with the options iden
 
 *716
 
 tified in 11 U.S.C. § 521(2)(A),
 
 [1]
 
 which we deemed to be exclusive in
 
 In re Edwards,
 
 901 F.2d 1383 (7th Cir.1990), the court gave each • of the debtors thirty days in which to negotiate and execute a valid reaffirmation agreement with his or her creditor (§ 524(e)), to redeem the collateral by making a lump sum payment of its value to the creditor (11 U.S.C. § 722), or to surrender the collateral.
 
 Id.
 
 at 438, 445.
 
 [2]
 

 The debtors appealed, and the district court affirmed.
 
 Turner v. Hopper,
 
 No. 97 C 2149, Order (C.D.Ill. Sept. 29, 1997) (Baker, J.). Judge Baker agreed that more is required than unilateral action on the part of the debtor for a reaffirmation to be valid under section 524:
 

 [The statute] refers repeatedly to an agreement. An
 
 agreement
 
 necessitates negotiation, a meeting of the minds. The appellants’ unilateral declarations cannot suffice to create an agreement to which the creditor is not a party.
 

 Id.
 
 at 2 (emphasis in original).
 

 The Geraci firm’s practice of filing unilateral declarations of reaffirmation has met with consistent disapproval elsewhere within the circuit. Judges Schmetterer and Ginsberg of the Northern District of Illinois have each written opinions finding these documents to be invalid.
 
 In re Lindley,
 
 216 B.R. 811 (Bankr.N.D.Ill.1998);
 
 In re Hasek,
 
 No. 96 B 23346, Mem. Op. & Order (Bankr.N.D.Ill. June 26, 1997) (unpublished). At oral argument, we inquired of counsel for the United States Trustee whether unilateral reaffirmations had been noticed outside of this circuit. We have since been informed by letter that the United States Trustees and their field offices were canvassed, and of the responses received, none reported seeing these types of reaffirmations outside of the judicial districts encompassed by this circuit. Moreover, within this circuit, the only unilateral reaffirmations that U.S. Trustees have encountered were filed by the Geraci firm. Letter from Jeanne M. Crouse, Office of the General Counsel, Executive Office for U.S. Trustees, to the Clerk of the U.S. Court of Appeals for the Seventh Circuit (April 13, 1998) (on file in this appeal).
 

 II.
 

 So long as a debtor is current on his prepetition debt and wishes to reaffirm his contract with the creditor according to its original terms, the appellants argue, he is entitled to do so unilaterally and need not first obtain the creditor’s consent for the reaffirmation to be valid. We agree with .the appellants that their argument poses a legal question and that our review of the decisions below is therefore de novo.
 
 See In re Platter,
 
 140 F.3d 676, 678 (7th Cir.1998).
 

 Before we turn to the merits of the appeal, however, we must point out that only two of the six eases underlying this appeal are properly before us at this juncture. In the case of appellants Michael and Molly Kleppin, their creditor, Bank Illinois, withdrew its objection and consented to the unilateral reaffirmation they had filed, and for that reason the bankruptcy court ultimately allowed that reaffirmation. 208 B.R. at 444-45. Because the Kleppins secured the reaffirmation they sought, the judgment under review resulted in no injury to them that could be redressed by anything we have to say. Consequently, they lack standing to appeal.
 
 Deposit Guar. Nat’l Bank, Jackson,
 
 
 *717
 

 Miss. v. Roper,
 
 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980) (“A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it.”);
 
 see also California v. Rooney,
 
 483 U.S. 307, 311, 107 S.Ct. 2852, 2854, 97 L.Ed.2d 258 (1987);
 
 EEOC v. Chicago Club,
 
 86 F.3d 1423, 1431 (7th Cir.1996). Chad Turner as well as Ronald and Margaret Orr have negotiated with their creditors and filed new reaffirmation agreements which supersede the unilateral declarations they originally filed. Because they complied with the bankruptcy court’s order by entering into bilateral reaffirmation agreements, there is no relief that we could grant to these appellants, and their appeals are therefore moot.
 
 See North Carolina v. Rice,
 
 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (per curiam) (“federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them”);
 
 see also, e.g., Keyes v. School Dist. No. 1, Denver, Colo.,
 
 895 F.2d 659, 663 (10th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1082, 111 S.Ct. 951, 112 L.Ed.2d 1040 (1991);
 
 Newman v. Alabama,
 
 683 F.2d 1312, 1317 (11th Cir.1982),
 
 cert. denied,
 
 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). Finally, Ralph and Betty Moery sought and were granted permission by the district court to dismiss their appeal. This leaves only the cases of Charles Jones and David Kirehberg before us at this juncture.
 

 The distinguishing feature of a Chapter 7 proceeding for the individual debt- or is the discharge: after surrendering his non-exempt property for the benefit of his creditors, the debtor is discharged from what remains of most of the debts he owed as of the date the bankruptcy petition was filed.
 
 See
 
 1 Robert E. Ginsberg & Robert D. Martin, GINSBERG & MARTIN ON BANKRUPTCY § 12.01, at 12-4 (4th ed. rev.1998). Section 524(e) of the bankruptcy code
 
 [3]
 
 embodies a significant exception to this principle, in that it permits the debtor to voluntarily reaffirm a pre-petition debt. As we indicated at the outset, if he cannot afford to redeem the collateral, the debtor can simply surrender the property; and by virtue of the discharge he will bear no personal liability to his creditor. But, as the bankruptcy court explained, if the debtor elects to reaffirm the debt, he “[will] be bound as if he had never gone through bankruptcy, and the creditor [will]
 
 *718
 
 have a right not only to pursue its collateral, but to pursue the debtor for any deficiency on its loan balance after credit for the value of the collateral.” 208 B.R. at 438. A reaffirmation agreement is the only vehicle through which a dischargeable debt can survive a Chapter 7 discharge. Ginsberg & Martin § 12.12[D] at 12-80.
 

 Because section 524 permits the debt- or to reassume debts of which he would otherwise be relieved, it is in tension with the fresh start that the discharge of indebtedness is intended to give the debtor.
 
 See Duke,
 
 79 F.3d at 44. The statute thus imposes a variety of conditions upon reaffirmation designed to ensure that the debtor who elects to reaffirm a pre-petition debt does so knowingly and in his own best interest:
 

 • the agreement must be filed with the court;
 

 • the agreement itself must contain “a clear and conspicuous statement” advising the debtor that he may rescind the agreement within sixty days after it is filed or at any time prior to discharge;
 

 • if an attorney represented the debtor during negotiation of the agreement, the filed copy of the agreement must include a declaration by counsel that the agreement is “fully informed” and “voluntary,” that it does not impose an “undue hardship” on the debtor or his dependents, and that counsel advised the debtor of the legal effect and consequences of both the agreement and any default under that agreement;
 

 • if the debtor was not represented by counsel in the negotiation of the agreement, then the court must hold a hearing attended by the debtor and inform the debtor that he is not obliged to enter into a reaffirmation agreement and explain to the debtor the legal effect and consequences of both the agreement and any default thereunder; moreover, unless the debt is a consumer debt secured by real property, the court must review the agreement and find that it does not impose an undue hardship on the debtor or his dependents and that it is in the best interest of the debtor.
 

 11 U.S.C. § 524(c), (d);
 
 see Lindley,
 
 216 B.R. at 815-16. As the appellants themselves concede, all of these requirements must be complied with in order for a reaffirmation agreement to be deemed binding. Appellants’ Br. at 10-11;
 
 see Turner,
 
 208 B.R. at 437;
 
 In re Bowling,
 
 116 B.R. 659, 663-64 (Bankr.S.D.Ind.1990); 4 Lawrence P. King, Collier on BANKRUPTCY ¶ 524.01 at 524-11 (Matthew Bender 15th ed. rev.1997).
 

 Implicit in the statute’s repeated reference to an “agreement” — the word is used no less than eighteen times in section 524(c) — is the requirement that the creditor as well as the debtor consent to the reaffirmation. Fundamental to the concept of an agreement is an expression of mutual assent between the two (or more) parties to that agreement.
 
 See Midland Hotel Corp. v. Reuben H. Donnelley Corp.,
 
 118 Ill.2d 306, 113 Ill.Dec. 252, 515 N.E.2d 61, 65 (1987); Restatement (Second) of Contracts § 3 (1979); 1 Samuel Williston, A Treatise on the Law of Contracts §§ 1.3 at 13, 1.4 at 16 (4th ed.1990); 1 Joseph M. Perillo, Corbin on CONTRACTS § 1.9 at 24-25 (Rev. ed.1993).
 
 [4]
 
 Re-enforcing the notion that reaffirmation requires the consent of both debtor and creditor is the requirement that the debtor be advised of his rights either by an attorney or by the court, depending on whether an attorney “represented the debtor during the course of
 
 negotiating
 
 an agreement under this subsection .... ” § 524(c)(3) (emphasis ours);
 
 see also
 
 § 524(c)(6), (d). Consistent with the premise underlying that provision, we observed in
 
 Edwards
 
 that “reaffirmation is supposed to involve a fully voluntary negotiation on both sides.” 901 F.2d at 1386;
 
 see also Duke,
 
 79 F.3d at 44 (quoting
 
 Edwards).
 
 We took our cue on that point from
 
 In re Bell,
 
 a Sixth Circuit decision recognizing that “the creditor, for whatever reason, may reject any and all tendered reaffirmation offers.” 700 F.2d 1053, 1056 (1983);
 
 see also In re Brady,
 
 171 B.R. 635, 639-40 (Bankr.N.D.Ind.1994);
 
 In re Schmidt,
 
 145 B.R. 543,
 
 *719
 
 544 (Bankr.W.D.Mich.1992);
 
 In re Briggs,
 
 143 B.R. 438, 460 (Bankr.E.D.Mich.1992);
 
 In re Harp,
 
 76 B.R. 185, 188 (Bankr.N.D.Fla.1987);
 
 In re Pendlebury,
 
 94 B.R. 120, 123 (Bankr.E.D.Tenn.1988);
 
 In re Schmidt,
 
 64 B.R. 226, 229 (Bankr.S.D.Ind.1986);
 
 In re Whatley,
 
 16 B.R. 394, 396-97 (Bankr.N.D.Ohio 1982). Our observation in
 
 Edwards
 
 was, strictly speaking, a dictum, but today we embrace it in finding the declarations of reaffirmation before us to be invalid. We are given no reason to believe that the “agreement” to which section 524(c) makes such frequent reference should be accorded anything other than its ordinary meaning.
 
 See, e.g., United States v. LaBonte,
 
 520 U.S. 751, 117 S.Ct. 1673, 1677, 137 L.Ed.2d 1001 (1997);
 
 Walters v. Metropolitan Educ. Enters.,
 
 519 U.S. 202, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997). As unilateral statements of reaffirmation, filed without notice to the creditors, let alone their consent, the declarations at issue here cannot be understood as the mutual “agreement” that the statute requires.
 

 As justification for their failure to obtain the creditors’ consent, the debtors argue that a creditor has no choice but to allow the reaffirmation so long as the debtor is current on the debt and is willing to continue paying according to the original terms and conditions of the agreement. To hold that the creditor may refuse reaffirmation under these conditions, the debtors suggest, would be inconsistent with a series of cases declining to enforce the “default upon filing” or “ipso facto” clauses found in many installment contracts.
 
 See, e.g., Lowry Fed. Credit Union v. West,
 
 882 F.2d 1543, 1546-47 (10th Cir.1989);
 
 Riggs Nat’l Bank of Washington, D.C. v. Perry,
 
 729 F.2d 982, 984-88 (4th Cir.1984);
 
 In re Peacock,
 
 87 B.R. 657, 659 (Bankr.D.Colo.1988) (collecting cases). Typically the issue in these cases is whether such a clause entitles the creditor to circumvent the automatic stay and move to seize the property seeming the debt unless the debtor acts immediately to redeem the collateral or to reaffirm the debt. That, of course, is not the situation here; so far as the record reveals, all of the debtors elected reaffirmation without the threat of immediate seizure hanging over their heads. However, in assessing the debtor’s options, these and other cases suggest that the debtor who is current on his installment payments may not be compelled to choose among the three options identified in section 521(2)(A), but may instead opt simply to keep making payments on the debt without reaffirming it.
 
 See In re Parker,
 
 139 F.3d 668, 671-73 (9th Cir.1998);
 
 In re Boodrow,
 
 126 F.3d 43 (2d Cir.1997) (2-1 op.),
 
 cert. denied,
 
 — U.S. -, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998);
 
 In re Belanger,
 
 962 F.2d 345 (4th Cir.1992);
 
 see also In re Gerling,
 
 175 B.R. 295, 297 n. 1 (Bankr.W.D.Mo.1994) (collecting cases).
 
 Contra, In re Johnson,
 
 89 F.3d 249 (5th Cir.1996);
 
 In re Taylor,
 
 3 F.3d 1512 (11th Cir.1993);
 
 Edwards,
 
 901 F.2d at 1386-87;
 
 Bell,
 
 700 F.2d at 1055-58;
 
 Boodrow,
 
 126 F.3d at 57-61 (Shadur, J., dissenting);
 
 see also Gerling,
 
 175 B.R. at 297 n. 2 (collecting cases). If a debtor can do that, the appellants reason, then he ought to be able to unilaterally reaffirm the debt according to its original terms. We need not decide whether these cases, which are in evident tension with our opinion in
 
 Edwards,
 
 were correctly decided, for the debtors in the cases before us have never sought to keep making payments
 
 without
 
 reaffirming their debt. Their stated purpose at all times has been to reaffirm; and as even their own cases recognize, reaffirmation requires the consent of the. creditor as well as the debtor.
 
 E.g., Boodrow,
 
 126 F.3d at 51;
 
 Belanger,
 
 962 F.2d at 348;
 
 Peacock,
 
 87 B.R. at 660;
 
 In re Rose,
 
 21 B.R. 272, 277-78 (Bankr.D.N.J.1982);
 
 see also
 
 Taylor, 3 F.3d at 1514 n. 2;
 
 Edwards,
 
 901 F.2d at 1386;
 
 Bell,
 
 700 F.2d at 1056.
 

 The debtors suggest that in looking for evidence of the creditor’s assent to the reaffirmation — namely, the creditor’s signature— the lower courts imposed a requirement that is nowhere to be found in the express terms of section 524(c) and that the law of contracts does not otherwise demand. They point out that a creditor’s signature is not invariably required for there to be a binding agreement. On contracts for the sale of goods for the price in excess of $500 or more, for example, the Illinois commercial code demands a signature only from the party against whom enforcement is sought. 810 ILCS 5/2—
 
 *720
 
 201(1).
 
 [5]
 
 Credit card agreements and automobile sales contracts typically are also entered into with the consumer’s signature alone.
 
 [6]
 
 Moreover, the commercial code permits a party to retract his anticipatory repudiation (to which the debtors liken a bankruptcy filing) by any method which clearly demonstrates to the other party his intent to perform his contractual obligations. 810 ILCS 5/2-611(2). Yet, as Judge Schmetterer has pointed out, a reaffirmation agreement is not a contract for the sale of goods or the extension of credit.
 
 Lindley,
 
 216 B.R. at 817. It is an agreement to re-embrace a preexisting debt that would otherwise be discharged in bankruptcy. In that respect, it is a creature of the bankruptcy code, which conditions such an agreement on the satisfaction of requirements aimed at eliminating doubt as to the voluntariness and validity of the agreement itself. True enough, section 524(c) does not expressly require the creditor’s signature; but it does, as we have discussed, unmistakably envision an “agreement” between the creditor and the debtor. The bankruptcy court believed that the creditor’s signature provides the most ready and concrete indicium that the creditor is aware of the reaffirmation and that creditor and debtor alike have assented to its terms. 208 B.R. at 436;
 
 see also Hasek,
 
 Mem. Op. & Order at 5. Its reasoning in that regard is unassailable; the same thinking no doubt underlies Bankruptcy Form B 240, which includes a line for the creditor’s signature, as well as the local bankruptcy rules and forms in a number of districts that expressly require the creditor’s signature on the reaffirmation agreement. See Arizona LBR 40081(a)(4) & Form 4008-1; Idaho LBR 4008.1(a), (b); Maryland LBR App. C; Minnesota LBR Form 4008-1; South Carolina LBR 5005 — 2(b)(9); E.D. Va. LBR 40081(B); Vermont LBR Form 13; S.D. West Virginia LBR App. F, Form F-6; Wyoming LBR 4008-1 & Form F;
 
 see also
 
 W.D. New York LBR 4008-1 (requiring Form B 240 or equivalent); W.D. Washington LBR 4008 & App. A (same).
 
 [7]
 

 The appellants have advanced, finally, a number of arguments based in equity and the policy concerns underlying section 524(c) in support of the unilateral declarations they filed. They emphasize that the requirements set forth in the statute are designed to protect the debtor, not the creditor. In their view, to demand that a debtor who is current on his obligation and willing to reaffirm the debt without modification first obtain the creditor’s consent serves only to delay reaffirmation and to saddle the debtor with the fees that the creditor’s counsel will inevitably charge for negotiating and drafting the reaffirmation agreement. Our opinion in
 
 Edwards,
 
 however, makes plain that section 524 is not wholly debtor-oriented. We observed there that “[t]he 1984 -Consumer Finance Amendments to the Bankruptcy Code [which included substantial modifications to section 524] were intended,
 
 inter alia,
 
 to protect creditors from the risks of quickly depreciating assets and to keep credit costs from escalating because of the too-ready availability of discharge.” 901 F.2d at 1386, citing
 
 In re White,
 
 49 B.R. 869, 872 (Bankr.W.D.N.C.1985);
 
 see also Lindley,
 
 216 B.R. at 816. We also have our doubts as to how efficaciously the kind of reaffirmation document at issue here serves the debtor’s interests. Filed without notice, a unilateral reaffirmation may
 
 *721
 
 well give rise to eleventh-hour (not to mention post-discharge) disputes when an unwitting creditor learns that a reaffirmation has been attempted without its prior consent. As Judge Ginsberg observed in
 
 Hasek,
 
 “[f]iling such a document can, at best, only serve to confuse interested parties, and needlessly increase the cost of administering the bankruptcy estate.” Mem. Op. & Order at 7. Because it also purports simply to reaffirm the “BALANCE OWED PURSUANT TO [THE] ORIGINAL TERMS OF THE LOAN AGREEMENT,” omitting even to disclose what that balance is, this Spartan reaffirmation also invites subsequent surprise and regret on the part of a debtor who is mistaken as to the amount and terms of the debt he is re-embracing.
 
 Cf.
 
 Form B 240 (which includes “Summary of Terms of the New Agreement,” including principal amount due, interest rate, monthly payment, description of security, and present market value);
 
 see also Turner,
 
 208 B.R. at 439-40 (letter from creditor’s attorney to debtor’s counsel, noting the many questions raised by unilateral reaffirmations filed by Geraci firm). A reaffirmation that is the product of negotiation between debtor and creditor is far less likely to create problems (including unnecessary costs to the debtor) further down the road. And we trust that bankruptcy courts will keep an eye on the fees requested by creditors for negotiating and drafting routine reaffirmation agreements.
 

 At bottom, however, whatever merit the debtors’ arguments may have, we simply cannot turn a blind eye to the statute. Section 524(c) quite plainly requires an agreement, not just a unilateral declaration of reaffirmation by the debtor. Disputes over the wisdom of this requirement are better addressed to Congress.
 
 See Bell,
 
 700 F.2d at 1056-57, quoting
 
 In re Schweitzer,
 
 19 B.R. 860, 864 (Bankr.E.D.N.Y.1982).
 

 III.
 

 The appeal is dismissed in part insofar as it concerns appellants Michael and Molly Kleppin, Chad Turner, Ronald and Margaret Orr, and Ralph and Betty Moery. We affirm the judgment as to appellants Charles Jones and David Kirchberg. The unilateral declarations of reaffirmation filed on their behalf do not comply with 11 U.S.C. § 524(c), which requires an agreement between the creditor and debtor.
 

 Dismissed in Paet and AffiRmed in Paet.
 

 [1]
 

 . Section 521(2) provides:
 

 [I]f an individual debtor’s schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
 

 (A) within thirty days after the date of the filing of a petition under Chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property!.]
 

 [3]
 

 . The statute provides:
 

 An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargea-ble in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—
 

 (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
 

 (2) (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
 

 (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
 

 (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
 

 (A) such agreement represents a fully informed and voluntary agreement by the debtor;
 

 (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
 

 (C) the attorney fully advised the debtor of the legal effect and consequences of—
 

 (i) an agreement of the kind specified in this subsection; and
 

 (ii) any default under such an agreement;
 

 (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;
 

 (5) the provisions of subsection (d) of this section have been complied with; and
 

 (6) (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—
 

 (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
 

 (ii) in the best interest of the debtor.
 

 (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.
 

 11 U.S.C. § 524(c).
 

 [2]
 

 . The debtor also has the option of converting a Chapter 7 liquidation to a Chapter 13 proceeding, which would enable him to make installment payments on the "cramdown” value of the collateral.
 
 See In re Bell,
 
 700 F.2d 1053, 1057 (6th Cir.1983);
 
 In re Lindley,
 
 216 B.R. 811, 816, 817 (Bankr.N.D.Ill.1998);
 
 In re Brady,
 
 171 B.R. 635, 639 (Bankr.N.D.Ind.1994);
 
 see also Associates Commercial Corp. v. Rash,
 
 - U.S. -, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).
 

 [4]
 

 . The appellants themselves agree that conventional contract principles are applicable to reaffirmation agreements. Appellants' Br. at 7.
 

 [5]
 

 . Of course, that party might well turn out to be the creditor in the scenario before us. Recall that none of the creditors here was given notice of the reaffirmations that the Geraci firm filed. A creditor unwilling to let the debtor reaffirm the debt might well decline to cooperate once it learns of the unilateral reaffirmation.
 

 [6]
 

 . In that context, however, the creditor’s assent is manifested by performance of its obligations under the agreement.
 
 Lindley,
 
 216 B.R. at 817.
 

 [7]
 

 . We note that the bankruptcy court apparently did not treat the lack of a creditor’s signature to be wholly dispositive of the validity of the reaffirmation. As we have previously mentioned, the court ultimately did approve the reaffirmation executed by the Kleppins once their creditor, Bank Illinois, withdrew its objection.
 
 Turner,
 
 208 B.R. at 444-45. The debtors’ focus on the need (or not) for the creditor's signature in fact obscures the larger point that they attempted to reaffirm their debts without the knowledge or consent of their creditors. That the law recognizes one-signature contracts in certain settings is of no help to these debtors, therefore, because it is still expected that the parties have come to some type of
 
 agreement.
 
 Without so much as notice of the debtor’s wish to reaffirm, a creditor cannot be deemed to have given its consent.